Judge, the next matter is number 23-1921, Laker-Gesualdo v. Honeywell Aerospace of Puerto Rico, et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning. This is Rafael Luis Mendoza for plaintiff's appellant, Mr. Laker-Gesualdo. I would like to reserve two minutes for the ball. You may. Your Honors, this case is about when the limitation period for the case of the EOC later dismissed the right to sue notification, sent to the appellant's counsel. When did that limitation period begin and whether the tolling of the train was not followed? There are several essential facts that are on this case that I would like to regard as material facts. One, I don't want to rush you forward, but just by your own account, as of the second letter, the April 6th letter, the one that says there's a decision that you should check. The first one, May 29th. March 29th. You say it's not, but then the one in April, as to that decision right after that, I don't know if it's you or the attorney below, it was you, says to the EOC official, the clock has started because I only have X number of days from right now. So it would seem that at least as of that date, you're on notice that the clock has started. Yes, Your Honor. Let me— And I just want to—am I right that aside from the wrinkle, which is maybe a very big wrinkle, that as of that date you couldn't access the decision itself, if we started from that date, you still need the Act of Controlling Doctrine to apply, because it would still be late even as of that date, right? Yes, Your Honor. Okay, and then is the contention, if I just start from that date, one contention you make is something that you learn later from the right-to-sue letter that you get as the third letter. You actually can access the decision. Yes. Which is this point about the clock starts when you read it. Yes. But if I put that aside for a moment, even before we get to that date, I take it your contention was you were impeded from reading it as of April 6th by the technological obstacles of getting it. Is that right? Yes. How many days did you lose in consequence of just those technical difficulties? From April 6th to April 11th. So if we credited those five days under equitable total, you then would not be late, even if we didn't get to the question of what's the significance of what the right-to-sue letter actually said. That's correct. What was the district court's? The district court never got to that question because the district court treated the first letter as the problematic letter. Yes, Your Honor. That's correct. The district court memorandum of order actually just bases its decision only on the issue that it concluded that there was nothing in the record that would lead the court to conclude that counsel would have not had access on March 29th. And if we thought that was error, not saying we do, but if we thought that was error, and then we say, given the evidence in the record showing that you yourself thought the clock started on April 6th, independent of whether the letter actually should have started the clock, because it just says decision, it doesn't say final decision or final action or anything like that. But since you say that, it's a little hard to say you didn't know that the clock started with that letter. If we took that view and we thought, is there any dispute in the record about your capacity to have seen the ultimate decision in the letter during those five days? In other words, is the record clear in your view that you simply could not access it as of April 6th until April 11th? That's correct. And is the defendant disputing that even? No, Your Honor. I don't think the defendant is disputing that. I believe what... So just from your perspective, if we thought there was error in the district court on that first point, would there be any reason to remand, or would it simply be appropriate to say it's plain that equitable tolling would apply because if you were notified April 6th, there's no way you could get it until April 11th? Or are you asking us to affirm directly on that basis, or are you asking us to remand for an assessment of what the significance is if the starting point is the second letter? Well, Your Honor, we asked for both things in the alternative. And the reason is as follows. First of all, our communication with the officer at the time saying, hey, the clock may have started already, is not an indication that we knew for certain the clock had started. And I should state that because a decision, which is the second email, the second email is the first time the EOC says a decision has been reached. On the first email, March 29th, it only says a document was added to the case. On the second email, April says a decision has been reached. The EOC has alternatives in terms of a decision. It can dismiss and issue a right to sue, or it could say I'm taking the case forward. But your view is you can win even if the clock did start on the second letter, and even if the record shows you knew it would start on that letter. I know you dispute that, but it certainly wouldn't be crazy on this record for a district court to find that you did know, given the statement. Well, yes. As an attorney, of course, it's my expectation that most of the time, right, as it is historically, I cannot dispute that, that most of the time, over 90-some percent of the time, when the EOC produces a decision, it's a decision to dismiss and a notification of a right to sue. But if we thought, so then, let's take that, that there's no reason to remand necessarily so you can prove that you didn't really know the clock started then. Because your position is even if you did know the clock started with the second letter, you still win. Yes. Because you couldn't access the letter. So you should get it. Is there anything to remand on with respect to the question of whether you could get access to the letter? Well, Your Honor, we believe there's no need to remand for that question. However, if we post it as an issue of whether this court would find that there was nothing in the record to say either way in that case. And why do you say that's what I'm a little puzzled by? What's missing from the record as to whether you could access the record between the 6th and the 11th? We believe nothing is missing, but the only one in this case, the defendant of the lease, the defendant of the lease, maintained that we could have accessed it. When? In their brief. No, no, when, on their view, as you understand it, when could you have accessed it? Any time after March 29th, including the period between April 6th and April 11th. Well, that's I guess what I'm really asking. One way to read what they're saying is it's not clear whether you could have between March 29th and April 6th, but do they also take the view that it's unclear whether you could have accessed it between the 6th and the 11th? We believe so, yes. Even despite the undisputed evidence of the communications with IT? Yes, Your Honor. I see. I would like to add since we're out of time here, if I may, if you look at all the case law that both parties have signed, there is a common thread, and the common thread is that the clock would start ticking on the moment the person could be construed to have acknowledged that a decision had been reached, and in this case that was April 6th. We add to that the fact that we couldn't access the document until April 11th as the communications between the plaintiff and the EEOC showed. Therefore, those few days in between cannot be included on Ms. Vilega Garcia-Escalado. Additionally, she attended the issue very promptly. The notification on April 11th was received at 11 o'clock at night, and it was April 12th, the next morning, between 7 something in the morning, if I'm not mistaken. The communications with the EEOC started saying, hey, we cannot access this decision. We need to have access, and that's when the database met. Thank you, Your Honor. Go ahead. You mentioned you were counseled below. So as an attorney who will go before the EEOC and then ultimately to the district court, you need to see that decision and know what it is because your advice to your client could be simply, listen, we got nothing here. We're not going to go to the district court, file suit, or let's do it. You need to see that because you just can't file anything without knowing what's in it. Am I correct? Yes. Yes, Your Honor. And furthermore, if you look at the letter itself, it instructs the plaintiff, whether it was me or another attorney, it would instruct the plaintiff that they had, or the charging party at that time, right, that she had 90 days to file a suit, and that that period would begin generally at the time where the person is reading the letter. So that has to be considered. If the notification on March 29th had said that a decision has been made in your case, you would agree that that would be noticed? Yes. Yes. And I would also argue… I thought you were contesting that because it doesn't say final agency action or final decision. I thought you thought a letter that simply says a decision in your case is ambiguous. As to whether that starts the clock, am I misunderstanding you? No, March 29th email doesn't say even decision. I know that. This is… I thought Judge Monaco asked if the March 29th letter had said a decision has been made in your case. Yes. Would that start the clock? That's what the April 6th letter said. It would start the clock if at that time we would not have had any access. We don't know that. I thought you were taking the position that that language does not itself suffice to start the clock. That it needed to say, say, a final decision or something like that. Of course. Of course. But the first email, March 29th, doesn't say even decision. I understand that. So our position is that it didn't start the clock. Okay. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellees please introduce herself on the record to begin? Thank you. Pleased to report. Chiara D'Andrea Fernandez on behalf of Appellee Honeywell International Honeywell Address Base of Puerto Rico. So let's clarify one thing first. The district court didn't simply just say, we have to start the clock on March 29th. It actually says, even if we consider the second notice on April 6th was an email reminder that we both received, it would have been late because it was filed 92 days after receipt of that one. But what about the fact that he couldn't access the document? Your Honor, based on the case law that we quoted on our brief, that goes to the question of equitable tolling. It does not, it's not relevant to the question of time limits. There is no question that Counsel... Okay, but we have to find the start date for equitable tolling. Correct. And the start date for equitable tolling is the date on which there is notice of a final decision. You agree with that, right? Your Honor, we believe that the case law establishes that that March 29th notice that specifically mentioned and instructed Counsel to go to the EOC portal to reach an option. But if we disagree with you on that, are you making an argument that nonetheless, equitable tolling would not excuse the five days between April 6th and April 11th? If we thought that the first time there was an indication of a final decision was April 6th, are you taking the position he still loses? Correct, Your Honor. So why is that when there's, as far as I can tell, undisputed evidence that he couldn't access the decision between the 6th and the 11th? Because the technical difficulties that Counsel may have had in order to access the document, the question of equitable tolling has to comply with two requirements. It has to be the plaintiff pursued his rights diligently. Is there any indication? We're not questioning, we're not questioning that. But as Quigley said, that it actually has to comply with the second, which is you have to show extraordinary circumstances. He has extraordinary circumstances, he couldn't access the document. We do not believe that those are extraordinary circumstances. Why not? The plaintiff still had 77 days in order to file this lawsuit, and we submitted several case law that establishes that having ample time in order for her to file her lawsuit was enough, and that's not extraordinary. So in this case in particular, if we count from April the 6th, she still had 77 days in order to file that lawsuit. We submitted case law that… But just so I understand this, they could have, on this view, if they had a policy of telling you your opinion about this ain't available, but when you go to get it, they have a policy of saying, but we're not going to give it to you for five days. You now have five days left to file. Well, Your Honor, equitable tolling doesn't allow the person to necessarily have an entire 90 days. That's not what the document says. Basically, it's a way of excusing… I know. I'm asking, on your view, that that would be an appropriate thing for the government to set up, that even though you're given this right of 30 days to file, 90 days to file, they could tell you on the first day of that 90-day period, your decision's ready, so the clock starts, but they have a policy of saying, but we won't let you see the decision for five days, so you only have 85 now, and you'd say that's fine because 85's enough. Except that that's not what happened. I'm not asking that. Would that be okay? I do believe that it's okay to have less than the 90 days because, again, what you're using… Even if they have an intentional desire to prevent you from having the full 90? If it's an intentional, yes. In here, there's no evidence whatsoever, and that's what the district court concluded, that there was absolutely nothing in here to say that there were extraordinary circumstances that prevented them to actually file within that 77-day period. So our argument in here is, and I think that we have to go back a little with respect to when the clock starts, that this report specifically includes both dates, refers to the March 29 date and refers to the April 6 date. With respect to March 29, there is absolutely nothing on the record that establishes that Plaintiff's Counsel could not open the document on March 29. We start from April 6. But the point, Your Honor, I think that we made in our brief is we shouldn't just simply say, oh, March 29 doesn't count. I understand, but if we disagreed with you on that, I just want to understand what your position is with respect to April 6. With respect to April 6, we have what Your Honor mentioned to counsel, which is that he admitted to the agency that the run had already started running. On April 7, when he actually tried to open the notice that he received on the 6th, he reached out to the agency and he said, I'm having technical difficulties in order to open this document. But by the way, and I'm going to quote it, it says, please look into this matter ASAP. As of today, my client has 89 days to file a lawsuit. So he was well aware on April 6 that the clock had already started running. You do agree he couldn't open the document from the 6th to the 11th? Yes, Your Honor. At this stage, obviously, of the proceedings, we're not contesting the fact that he was not able to open the document by the 11th. Well, we are making the argument that constructive notice starts the clock. It's no different from electronic court orders that we lawyers receive every day. It's the same sort of process. The ECF system generates a link and then we have to… You said that the district court decided in the alternative that if the notice clock starts on April 6, he still would not be excused because he still had 77 days. Where does the district court say that? The court refers to both days. The court says that… But he does it, as I read it, all in the context of the start date being March 29th. I don't see him saying, if the first time we got notice of the decision was April 6, he still was untimely not withstanding equitable tolling because he would have had 77 days. I'm not saying that the court mentioned the 77 days. The court considered both dates and said that it was late because it was filed on day 92. I don't have… So your position must be the district court then did not address whether equitable tolling would apply if April 6 was the first date. It did address equitable tolling, Your Honor. No, no. If April 6 was the first date on which he got notice of the decision. Yes, we do believe that he did because what the court says is that there are no factual assertions or documents before the court to show that Castle would not have been able to access and read the document on the date as instructed or shortly thereafter, and he attempted to do so upon the receipt of that first email. And I understand that, Your Honor, he's saying, arguing that we're not even considering the March 29 date. Our point is, that date shouldn't be just as… No, I'm trying to understand if we disagree with the conclusion that the clock starts on March 29. Did the district court make an independent ruling that even if the first notice was April 6, equitable tolling does not excuse the delay? If it didn't, one solution would be to remand the district court to address that. The court basically rejected applying in this case equitable tolling, and our position is the standard of review for equitable tolling is abuse of discretion. There is nothing on the record to establish that the judge at the district court level abuses discretion in concluding that in this case in particular… I guess I'll ask one last time. Suppose I think the district court did not address whether equitable tolling would apply if the start date was April 6. There would then be a question, should we remand? Is there any reason we should not remand on your view, even in that instance, if I assume the district court did not address the question? Yes, Your Honor, because I do believe that this court can evaluate the case that we submitted that specifically says that when the party still has ample time in order to file a lawsuit, then equitable tolling doctrine does not apply, because then there are… So as a matter of law, the district court would be required to reject equitable tolling? Correct. And there are…  AISOL that mentions that even 41 days was plenty of time for the party to actually file this lawsuit. Counselor, let me ask you from that perspective. Let's assume we rule in your client's favor, but that's a precedent. And where, for presidential purposes, where do we draw the line? So there's case law saying 45 days, the area was 6 days. But where do you draw the line? You know, it could be 6 days, you only have left to file, and that's ample time. How do we find ample time? Well, Your Honor, I think it's actually reasonable. And in this case in particular, you don't even have to go that low as 41 days as, for example, the McDonald v. St. Louis University case, or 63 or 60, because he had 77 days. So obviously I'm not saying that I'm arguing for 5 days or 1 day, but I do think that the circumstances would have been very different had he received this notice on day 85 or on day 89. But this is not what happened here. What happened here was there was a notice on March 29th. Nobody says anything about that being open or anything like that. There is case law that specifically mentions the fact that it doesn't say on the subject line that it was a final determination. It's not reason enough not to trigger the 90-day clock. Why? Because it's the same as if you receive an envelope on the mail. When you receive an envelope on the mail, you don't know the content of the letter unless you open it. So it is the same. It shouldn't be any different just because it was sent for the electronic bills. If it were an envelope like in the good old days, he would have opened it unless there were blankets on it. Yeah, but precisely there is case law that specifically says that when you received an envelope, and this is dating obviously 20 years back, saying if you received an envelope and you set it aside and it didn't open for whatever reason, the clock started in that case. It was 3 days. There was a presumption that you got it 3 days after it was mailed. In this case in particular, plaintiff counsel admitted that he received the March 29 envelope. That's undisputed. And there's nothing on the record that says that he tried to access it. But my point is obviously it's the same as when we received four orders. If we don't go on the access on the link, we don't know what the document is. But there is absolutely nothing on the record to establish that this was ever attempted with respect to the March 29. And with respect to the April 6, Your Honor, our argument is the equitable calling requires extreme, extraordinary circumstances. In this case, having had more than two months in order to complete that lawsuit, we do believe that the court acted appropriately. Just so I understand, the case – the best case that you have for this, 77, for the time that was adequate, are those – that's Asuncion and McDonald are the two you're relying on? McDonald says 41 days. Yes, Your Honor, Asuncion refers to 63 days. And in those two cases, was the person claiming equitable calling prohibited from accessing it because of technical difficulties? In the case of McDonald, yes, Your Honor. It is unapproved. That's a district court case? That is a district court case. All the cases that we submitted were district court. They were several district courts from different circuits, from the Fourth Circuit. And in those cases, was the plaintiff impeded from accessing the material because of technical – In the case of McDonald, yes. Any other case besides McDonald? I believe that in the case of McNee, which is a case from our – my district in New Hampshire, I believe it's the case. McNee versus – McNee, okay, thank you. McNee is from Pennsylvania. Thank you. But there are several other cases that, indeed, refer to problems similar to those that I just now saw. Okay, thank you. I just want to ask one more question. Leaving aside March 29th, assuming we're in the world of equitable tolling, the actual letter says – the agency sort of says generally the 90 days runs from the date of viewing the letter, which I think we all agree is April 11th. Is that something the district court should have considered or that we should take into consideration? The agency's actual representation, which I think we know is right under the law. We believe that the statutory language is clear that it's on receipt of the right to toll letter, and we believe that the court has to consider, obviously, that counsel indeed acknowledged that he had received and then the – That's not my question. My question is that the letter itself from the agency suggests a different date, and there are cases that say, you know, where an agency misrepresents the filing period. That's something you might consider in equitable tolling, and I think the appellate does make that argument. And there are some cases that we were quoted on the brief that specifically includes the same language that the AOC basically uses. So, obviously, that was rejected because the statutory language specifically refers to filing within 90 days on receipt. So you want to ignore those sentences in the letter? Correct. Thank you. Thank you, counsel. At this time, would counsel for the appellate please reintroduce himself on the record to begin? He has a two-minute rebuttal. Your Honor, Profiler Keith Mendoza for Ms. Betsy Esvaldo. Your Honor, very briefly, I'm going to make three comments. I'm glad counsel for Coneywell brought up the allocation of court orders. Certainly, one cannot not open an electronically certified court order, but let's assume that counsel would not be able to open it for whatever reason, technical difficulties. Would that mean that the time counsel would have to respond to the order cannot be extended because… What's your response to some of the McConnell cases? I mean, the cases that she cites that say, yeah, that's what some courts have held. Yes. In fact, let's go to McConnell. I think it's an important case. Okay. Very similar to this one. Plaintiff there receives—apprentice counsel receives a notification saying there's a document added to the case. Same as here. Eight days later, in this case it was seven, receives a notification saying a decision has been reached. At that point, counsel tries to access the decision, but counsel cannot access the decision because he had not obtained the credentials from the EOC before. So there's a huge difference there. The decision says we cannot establish a circumstance where purely the young plaintiff's control because counsel could have asked for the credentials way before the date of the decision. In this case, the technical difficulties were not known to plaintiff. So the difference is you exercise all due diligence necessary, therefore your client should have those six, seven days, whatever it is, versus somebody who did not exercise diligence. Correct? Yes. And finally, I must add that equitable tolling, there are several factors that the courts have said must be looked into to see if someone should benefit from it. And I will just briefly say that those factors actually favor Ms. Garcia as well. She did not receive the notice of April 11th. Constructive knowledge of the final cannot be imputed until April 6th. She was diligent on when she received the email stating a decision had been reached. This is all in the brief. We have the argument. Thank you. Thank you. May I leave? Yes. Thank you, counsel. That concludes argument in this case.